**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

—————————————————————————— :
SHMUEL DAVID,                         :
                                      :          Civil Action
            Petitioner,               :          No. 04-2098 (RBK)
                                      :
       v.                             :
                                      :          **O P I N I O N**
C.J. DEROSA,                          :
                                      :
                                      :
            Respondent.               :
—————————————————————————— :


        SHMUEL DAVID, #16834-038, Plaintiff <u>Pro</u> <u>Se</u>
        F.C.I. Fort Dix
        P.O. Box 2000
        Fort Dix, New Jersey 08640

        JOHN ANTHONY RUYMANN Assistant United States Attorney
        CHRISOTPHER J. CHRISTIE, United States Attorney
        Office of the United States Attorney
        402 East State Street, Room 430
        Trenton, New Jersey 08608


**KUGLER, DISTRICT JUDGE**

        Plaintiff Shmuel David ("David"), a prisoner confined at the
Federal Correctional Institution at Fort Dix, New Jersey ("FCI
Fort Dix"), has submitted a Petition for a Writ of Habeas Corpus
pursuant to 28 U.S.C. § 2241.  The sole respondent is C.J. DeRosa,
Warden of FCI Fort Dix.  Petitioner has paid the filing fee in
this matter.  For the reasons stated herein, this Court will deny
relief and dismiss the Petition.

## I. BACKGROUND

Petitioner asserts the following facts in support of his claim.  He currently is incarcerated at FCI Fort Dix, serving a thirty year sentence imposed after a jury trial.  On May 25, 2002, at mealtime, he was on line to eat and given an ice cream dessert by a food service officer.  After initially refusing the ice cream because he was eating "common fare" meals (Petitioner does not elaborate), Petitioner accepted the ice cream and thanked the officer.  Immediately afterward, another food service officer named Steele took the ice cream from Petitioner's tray, telling him to get out of the area.  After Petitioner explained that the ice cream was given to him by another officer, Steele allegedly called him a "snitch" loud enough to be heard by other inmates.  Petitioner loudly asserted that he was not a snitch and that the ice creams had been given to him by the other food service officer.  According to Petitioner, Steele raised his voice even louder and referred to him as snitching on the other officer.  Petitioner repeatedly loudly proclaimed that he was not a snitch.  Steele allegedly directly positioned himself in front of Petitioner while Petitioner was holding a full tray of food in both hands and shoved Petitioner, saying: "Get out of here."  Plaintiff states that after Steele spoke to another staff member who had approached him, he called Petitioner back.  Petitioner allegedly then placed his food tray on a table and began walking back towards Steele.  Petitioner was then brought to a back room

2

by two officers.  In the room, Steele allegedly denied that he had
called Petitioner a snitch.  Petitioner states that he was
"escorted to the hospital where they checked for bruises."  He
subsequently was handcuffed and taken to the Special Housing Unit,
while an investigation was to be conducted with respect to his
possible assault on a staff member (Steele).  Steele's incident
report does not mention his calling petitioner a snitch, only that
Petitioner was agitated at the loss of his ice cream and angrily
denied that he was a snitch.  Steele indicated that Petitioner put
down his food tray and approached him after initially being pushed
away.  According to the incident report, another officer (Simpson,
who originally had given Petitioner the ice cream) allegedly
intervened to stop Petitioner's second approach.

     Petitioner asserts that after spending a few days in
segregation, he was contacted by his case manager, Ms. Nivens.  At
the first meeting, Ms. Nivens allegedly told Petitioner that a
number of people had come forward in his behalf, and asked him if
he wanted a staff representative; Petitioner named one Williams.
However, Petitioner alleges, on a second visit with case manager
Petreillo, Nivens stated that it was not her responsibility to
find witnesses for Petitioner.  Nivens asked for a name and
Petitioner supplied that of officer Simpson, who had originally
given him the ice cream.

     According to Petitioner, he asked every staff member who
visited him to investigate the incident, and he refused to appear

3

before a disciplinary hearing officer ("DHO") without his staff representative.  Petitioner was again summoned to appear before the DHO a week later; Petitioner argues that he did not see his representative before appearing before the DHO.  Petitioner states that the DHO was very hostile; calling him a liar and not allowing Petitioner to state his defense.  The DHO found Petitioner guilty and imposed a sanction of thirty days' disciplinary segregation and twenty-seven days' loss of good time credits.  Again according to Petitioner, his staff representative Williams claimed to have spoken to the DHO and declined to speak on Petitioner's behalf during the hearing; Williams allegedly believed Petitioner, but declined to act against an unwritten policy that "Staff must support Staff."

After being served with the DHO's findings on June 25, 2002,Petitioner appealed.  The Northwestern Regional Office denied the appeal as untimely.[1]  Petitioner also contacted the Warden to complain about the impediments to his presentation of witnesses and conduct of an adequate investigation.  As a result, Lieutenant Marts interviewed one David Congrave, whom, according to Marts, did not see Steele push the Petitioner. Petitioner seeks to have the sanctions imposed revoked, alleging violation of his

---

[1] Respondent specifically states that failure to exhaust administrative remedies or untimeliness is not being contested. (Ans. To Pet., p11. And n.3.)

4

constitutional rights in the disciplinary process.  Respondent
opposes the Petition.


## II. DISCUSSION

"Habeas corpus petitions must meet heightened pleading
requirements", McFarland v. Scott, 512 U.S. 849, 856 (1994).  A
petition is required to "specify all the grounds for relief" and
to set forth "the facts supporting each of the grounds thus
specified."  See Rule 2(c) of Rules Governing Section 2254 Cases
in United States District Courts, applicable through Rule 1(b) to
Petitions under 28 U.S.C. § 2241.[2]  "In conducting habeas review,
a federal court is limited to deciding whether a conviction [or
confinement] violate[s] the Constitution, laws, or treaties of the
United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991);
accord Engle v. Isaac, 456 U.S. 107, 119-120 (1982); Barry v.
Bergen County Probation Dept., 128 F.3d 152, 159 (3d Cir. 1997).
"Federal courts hold no supervisory authority over state...
proceedings and may intervene only to correct wrongs of
constitutional dimension." Smith v. Phillips, 455 U.S. 209, 221
(1982).

---

[2] Moreover the Advisory Committee Notes to Habeas Rule 4
emphasize that "'notice' pleading is not sufficient, for the
petition is expected to state facts that point to a 'real
possibility of constitutional error.'" (citing Aubut v.  Maine,
431 F.2d 688, 689 (1st Cir. 1970)).

Section 2241 of Title 28, United States Code, provides in relevant part as follows:

> . . . Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions . . . (c) The Writ of habeas corpus shall not extend to a prisoner unless- . . . (3) He is in custody in violation of the Constitution or laws or treaties of the United States. . . [28 U.S.C. 2241)(C)(3).]

_____ Section 2241 constitutes the general habeas corpus statute under which federal prisoners may seek relief for claims of unlawful custody.  A petition brought under § 2241 challenges the very fact or duration of imprisonment, and seeks a determination that a petitioner is entitled to immediate release or a speedier release from that imprisonment.  Prieser v. Rodriguez, 411 U.S. 475, 484-86, 500 (1973).  See also Benson v. New Jersey State Parole Board, 947 F.Supp. 827, 829-31 (D.N.J. 1996)(§ 2241 is generally appropriate for claims challenging execution of sentence for which immediate or speedier release is appropriate); United States v. Walker, 980 F.Supp. 144, 145-46 (E.D.Pa. 1997)(challenges to a sentence as imposed should be brought under § 2255; challenges to the manner in which a sentence is being executed should be brought under § 2241).  The Court construes Petitioner's assertions as an attempt to assert the constitutional inadequacy of his disciplinary procedures at FCI Fort Dix, which

resulted in his conviction and disciplinary punishment and the
resulting effect upon the execution of his sentence.

Disciplinary Procedures: Confinement

Prison disciplinary proceedings are not part of a criminal
prosecution and the full panoply of rights due a defendant in such
proceedings does not apply.  Wolff v. McDonnell, 418 U.S. 539, 556
(1974).  A prison disciplinary hearing satisfies the Due Process
Clause if the inmate is provided with: (1) an impartial
decision-making body; (2) twenty-four hour advance written notice
of the charges; (3) an opportunity to call witnesses and present
documentary evidence, provided the presentation of such does not
threaten institutional safety or correctional goals; (4)
assistance from an inmate representative, if the charged inmate is
illiterate or if complex issues are involved; and (5) a written
decision by the fact finders as to the evidence relied upon.
Walker v. Dodrill, 2005 WL 1458760, *2 (M.D.Pa. Junne 20, 2005)
(citing Wolff, supra.); Griffin v. Spratt, 969 F.2d 16, 19-20 (3d
Cir. 1992); see also Superintendent v. Hill, 472 U.S. 445, 454
(1985).  However, these procedural due process protections must be
afforded only when a prisoner's constitutional liberty interest is
implicated.  See Sandin v. Connor, 515 U.S. 472, 487 (1995)
(neither the state prison regulation in question, nor the Due
Process Clause itself, afforded the prisoner a protected liberty

interest entitling him to the procedural protections set forth in Wolff).

Respecting his disciplinary confinement, Petitioner clearly lacks the requisite liberty interest.  The Due Process Clause itself confers no liberty interest in freedom from state action taken "within the sentence imposed." Sandin, 515 U.S. at 480 (quoting Hewitt v. Helms, 459 U.S. 460, 468 (1983)).  In addition, "Due process protection for a state created liberty interest is . . . limited to those situations where deprivation of that interest 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Griffin v. Vaughn, 112 F.3d 703, 706 (3d Cir. 1997) (quoting Sandin, 515 U.S. at 484).  See also  Farmer v. Hambrick, 155 F.3d 558 (4th Cir. 1998)(applying Sandin in a Bivens action); Davage v. U.S., 1997 WL 180336 (E.D.Pa. Apr 16, 1997); aff'd, 35 Fed. Appx. 356, --- F.3d ---- (3rd Cir. 2002).

Sandin and Griffin demonstrate that disciplinary confinement, under these circumstances, does not impose atypical and significant hardship upon the Plaintiff.  In Sandin, the Supreme Court held that disciplinary confinement for 30 days "did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." Sandin, 515 U.S. at 475, 486.  In Griffin, the Third Circuit held that a state prisoner's confinement in administrative segregation for 15 months did not impose an atypical and significant hardship on the

prisoner. <u>Griffin</u>, 112 F.3d at 706-09. <u>See also</u> <u>Sack v. Canino</u>, 1995 WL 498709, *1 (E.D.Pa. August 21, 1995) (assuming that the plaintiff was not afforded the protections called for by <u>Wolff</u>, the sanction of 30 days disciplinary confinement did not implicate a liberty interest; therefore there was no violation of the plaintiff's due process rights).

<u>Disciplinary Procedures: Loss of Good-Time Credit</u>

Petitioner also argues that his disciplinary procedings, resulting in a loss of good-time credits of twenty-seven days, were biased and constitutionally deficient as they "did not provide a meaningful opportunity to marshall the facts, prepare a defense, and call witnesses. (Pet. Grounds.) He also argues that the record lacks sufficient evidence to support the disciplinary action. (<u>Id</u>.)

In contrast to his claim relating to confinement, Petitioner did face a deprivation of a liberty interest in good conduct time in his disciplinary hearing, and was entitled to procedures sufficient to ensure that his interest in his good time credits was not arbitrarily abrogated. <u>Perez v. McKean</u>, 2005 WL 1526323, *1 (3rd Cir. June 29, 2005) (citing <u>Wolff</u>, <u>supra</u>.). In addition to the requirements of <u>Wolff</u> referred to above, the decision of the DO had to be supported by some evidence in the record. <u>Perez</u>, 2005 WL 1526323 at *1 (citing <u>Superintendent v. Hill</u>, <u>supra</u> at 454).

Applying these principles to the case at bar, the record indicates that Petitioner was afforded all the process required by Wolff, supra. See answer, accompanying affidavit of Kisha Hebbon, Esq. and Exhibits-1a-1d.  Advanced written notice was given on May 25, 2002, well before disciplinary hearing of June 10. (Ex. 1d, Hearing Report).  Petitioner was advised of his rights before the DHO; he requested a staff representative and Mr. Williams appeared. (Id.) Petitioner testified in his own behalf and did not appear to request witnesses on his behalf at the hearing. (Id.)  The DHO also considered evidence from officers Steele and Simpson.  A written decision was issued in which the DHO credited the credibility of Steele and Simpson over that of Petitioner, stating that Petitioner had "every reason to make this assertion in an effort to have the charge against [him] expunged.  Essentially, [Petitioner has] everything to gain and nothing to lose in that effort".  (Id.)  In light of the record, Petitioner has not substantiated his charge that the process was not impartial; he merely confirms his strenuous disagreement with the conviction and sanctions imposed.  As the requirements of Wolff were met and some evidence supporting the disiciplinary findings appears in the record; see Supreintendent v. Hill, supra., the hearing procedures employed and the result reached did not violate Petitioner's due process rights.

## III. CONCLUSION

Based upon the foregoing discussion, the Court will deny Plaintiff's application for habeas relief and dismiss the Petition.

An appropriate Order accompanies this Opinion.


S/Robert B. Kugler
**ROBERT B. KUGLER**
**UNITED STATES DISTRICT JUDGE**



**Dated:**   August 18, 2005

1